Joseph W. Rose, State Bar No. 232261
Mehran Tahoori, State Bar No. 283313
ROSE LAW, APC
11335 Gold Express Drive, Suite 135
Gold River, California 95670
Telephone:   (916) 273-1260
Facsimile:   (916) 290-0148
Email:       legalteam@joeroselaw.com

Attorneys for Plaintiff
MARCUS SHOAF

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARCUS SHOAF,<br><br>       Plaintiff,<br><br>v.<br><br>SUBURBAN PROPANE L. P., and<br>DOES 1 – 10, inclusive,<br><br>       Defendants | Case No. 2:18-at-00069<br><br>**COMPLAINT FOR DAMAGES AND OTHER RELIEF; DEMAND FOR JURY TRIAL** |

Plaintiff MARCUS SHOAF demanding a jury trial, complains and pleads upon information and belief against Defendants SUBURBAN PROPANE, L.P. and DOES 1 through 10, inclusive, as follows:

**INTRODUCTION**

1.    Plaintiff Marcus Shoaf ("Plaintiff") is a natural person and former employee of Defendant Suburban Propane, L.P. ("Suburban"), where he worked driving a propane truck. At all relevant times, Plaintiff was a resident of Sacramento County, California, and an employee of Defendant.

2.    Defendant Suburban is a limited partnership publicly traded nationwide marketer and distributor of energy products specializing in propane, heating oil, and refined fuels in deregulated markets. Defendant claims to maintain 3,200 full-time employees and provides services to 1.1 million residential and commercial customers via approximately 668 locations throughout 41 states.

3.    In addition to Defendant Suburban, Plaintiff sues fictitiously Does 1 through 10,

inclusive, because their names, capacities, status, or facts showing them to be liable are not presently known. Plaintiff will amend this Complaint to show their true names and capacities, with appropriate charging language, when such information has been ascertained. Plaintiff is informed and believes and thereupon alleges that each of the Doe defendants is responsible in some manner for the occurrences alleged and that Plaintiff's damages as alleged are proximately caused by such occurrences.

4.     Defendants Suburban and Does 1 through 10, inclusive, are individually and collectively referred to in this Complaint as "Defendants."

## JURISDICTION AND VENUE

5.     This court has diversity jurisdiction over this matter as Mr. Shoaf is a California resident, and Defendant Suburban is a Delaware corporation, with its principal place of business in Whippany, New Jersey. (Fed. Rules Civ.Proc. § 1332(c)(l).) The amount in controversy exceeds $75,000 (Fed. Rule Civ. Proc.§ 1332(b).) This Court has personal jurisdiction in that Defendant Suburban maintains an office, transacts business, has an agent, and/or is found in the Eastern District of California and is within the jurisdiction of this Court for purposes of service of process.

6.     Venue in the Eastern District of California is proper as the subject matter of this litigation and some or all of the alleged acts, conduct, and statutory violations occurred or otherwise transpired in the Eastern District of California, and Defendant Suburban is subject to personal jurisdiction in the Eastern District of California.

## AGENCY, JOINT VENTURE

7.     At all times mentioned in the claims for relief into which this paragraph is incorporated by reference, on information and belief, every defendant was the principal, partner, agent, servant, employee, co-conspirator and/or alter ego of the remaining Defendants. In doing the things alleged in the claims for relief into which this paragraph is incorporated by reference, every defendant was acting within the course and scope of this agency, partnership, servant, employment, conspiracy and/or alter/ego and was acting with the consent, permission, knowledge and/or authorization of the remaining Defendants. All actions of every defendant alleged in the claims for relief into which this paragraph is incorporated by reference were ratified and approved by the officers or managing agents of the remaining Defendants.

///

## FACTS COMMON TO ALL CAUSES OF ACTION

8. Plaintiff Marcus Shoaf worked for Defendant Suburban at the Placerville, California, business location beginning on or about September 26, 2016, and continuing until his separation from employment on January 21, 2017. Mr. Shoaf was hired as a commercial truck driver tasked with delivering Liquified Petroleum Gas (LPG or propane) to customers surrounding Placerville, using a propane truck with a mounted LPG tank, and paid at an hourly wage of $18.

9. Mr. Shoaf has extensive experience performing safety sensitive work, such as hazardous waste drilling, construction, heavy equipment operation, and the transportation of hazardous and explosive materials. Mr. Shoaf was a hard-working employee who performed his job competently and safely, seeking to obey all laws for protection of workers and the general public.

10. Mr. Shoaf's brief tenure with Suburban was marred by serious safety concerns and illegal directives from management which he communicated to management, and which he refused to participate in and accede to.

11. During his employment with Suburban, Mr. Shoaf complained to supervisor Jason Kirby, on at least three occasions that his assigned truck carrying approximately 2,600 gallons of LPG in a compressed tank was not road safe. Mr. Kirby was, at all relevant times, a managing agent of Suburban.

12. Near the end of 2016, Mr. Shoaf informed Mr. Kirby his assigned propane truck (#208081) was leaking approximately one gallon of engine oil nightly, which would impair the safe operation of the vehicle for the driver and other motorists sharing the roadway. Despite Mr. Shoaf's protest, management insisted the truck remain in operation. Within the next day or two, the propane truck suffered a catastrophic engine failure.

13. On January 13, 2017, Mr. Shoaf was assigned to truck #211048. Upon inspection of the truck, Mr. Shoaf learned the vehicle's passenger side convex mirror was missing, in violation of California Vehicle Code section 26709, making it impossible to fully visualize the perimeter of the vehicle and all blind spots, especially while making lane changes, backing, or navigating narrow and winding roadways. Mr. Shoaf reported this safety problem to his supervisor, documented it on an inspection report, and objected to illegally operating the propane truck without a side mirror.

14. Despite Mr. Shoaf's reports and objections, Mr. Kirby wrote, "VEHICLE IS ROAD

WORTHY AS IS" on Mr. Shoaf's driver's vehicle inspection report and instructed him to continue performing work including driving the propane truck with the missing side mirror.

15. Upon management's return of truck #208081 to Mr. Shoaf on January 17, 2017, Mr. Shoaf noticed and promptly notified his supervisor of his discovery the vehicle had an engine exhaust leak into the driver's compartment. He also noticed truck #208081 was excessively leaking engine coolant. Mr. Shoaf documented his concerns about the engine exhaust leak on his vehicle inspection report by writing, "Inside cab of truck – exhaust leak smell – large exhaust leak inside of cab of truck." A coworker confirmed Mr. Shoaf's suspicion by also stating he also believed there was an exhaust leak. Mr. Shoaf was instructed by Mr. Kirby to continue operating the vehicle with the engine exhaust and leak into the driver's compartment and coolant leak, and to complete his daily propane deliveries on the winding, narrow, and rural roads of El Dorado County to residential and commercial customers.

16. After approximately six hours of driving and operating truck #208081, Mr. Shoaf suffered a headache, burning around his eyes, nose, and throat, and severe fatigue. He immediately ceased operation of the vehicle and sought medical attention at Mercy Hospital of Folsom emergency department, where he was diagnosed on January 17, 2017, with "Accidental poisoning by carbon monoxide." The carbon monoxide poisoning resulted from the leak Mr. Shoaf previously reported.

17. On or about January 20, 2017, after returning to work following the carbon monoxide poisoning, Mr. Shoaf's supervisor instructed him to work and be on call for 48 consecutive hours, in violation of the Hours of Service Regulations promulgated by the Federal Motor Carrier Safety Administration. Mr. Shoaf objected to this instruction and refused to participate in this illegal activity.

18. On or about January 20, 2017, Mr. Shoaf's supervisor instructed him to enter the locked and vacant home of a residential customer who was not at home to check the pilot lights of LPG-burning appliances. Mr. Shoaf reasonably protested the instruction to enter the locked and vacant home, fearing he would be entering the home without the homeowner's consent. Mr. Shoaf's supervisor insisted he enter the locked and vacant home, despite Mr. Shoaf's repeated protest. Mr. Shoaf reasonably refused to enter the home without confirmation of consent to enter from the homeowner.

19. Suburban's insistence that Mr. Shoaf drive and operate propane tanker trucks with leaking coolant, engine exhaust, and a missing side-view mirror violated 49 C.F.R. 392.7, subdivision (a), which

ROSE LAW, APC
11335 GOLD EXPRESS DRIVE, SUITE 135
GOLD RIVER, CALIFORNIA 95670

provides:

> No commercial motor vehicle shall be driven unless the driver is satisfied that the following parts and accessories are in good working order, nor shall any driver fail to use or make use of such parts and accessories when and as needed:
>
> Service brakes, including trailer brake connections.
> Parking (hand) brake.
> Steering mechanism.
> Lighting devices and reflectors.
> Tires.
> Horn.
> Windshield wiper or wipers.
> Rear-vision mirror or mirrors.
> Coupling devices.
> Wheels and rims.
> Emergency equipment.

20. On January 20, 2017, Mr. Kirby implied Mr. Shoaf's job was in jeopardy by asking Mr. Shoaf whether he still wanted his job at Suburban, or similar words to this effect, as they were discussing the safety and other violations. Rather than participate in and accede to continuing to drive hazardous and mechanically defective propane trucks in violation of federal and state law and regulation, Mr. Shoaf left the worksite. While considering the multiple instances in which he was placed in dangerous and illegal circumstances in which he was instructed to perform illegal and unsafe work, Mr. Shoaf determined his only reasonable option was to resign his position with Suburban.

21. In making his safety and mechanical reports, complaints, and objections to his employment, Mr. Shoaf reasonably and in good faith believed the safety and mechanical issues he raised violated federal and/or state law. The violations Mr. Shoaf reported and refused to participate in were, in fact, violations of federal and state law.

22. Because of Mr. Shoaf's safety complaints, his refusal to participate in and accede to illegal and unsafe conduct, Defendant engaged in continuous pattern of making Mr. Shoaf's working conditions so intolerable that he had no reasonable alternative except to resign. Looking at the totality of the circumstances, a reasonable person in Mr. Shoaf's position would have felt that he or she was forced to quit because of intolerable, illegal, and unsafe working conditions. Mr. Shoaf refused to participate and acced to Suburban's illegality. Mr. Shoaf was constructively discharged.

# CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
### RETALIATION FOR REFUSAL TO PARTICIPATE IN UNLAWFUL ACTIVITY
### (Cal. Lab. Code § 1102.5(c))

23. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 22 as though fully set forth herein.

24. California Labor Code, Section 1102.5 subdivision (c), prohibits employers from retaliating against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

25. Defendants, and each of them, made Mr. Shoaf's work environment hazardous, unsafe, and intolerable such that he reasonably resigned his employment after he complained about and refused to accede to Defendants' unlawful instructions to continue working with repeated exposure to health and safety issues and violations of the law. Defendants, and each of them, constructively discharged Mr. Shoaf's employment because he disclosed information to his employer regarding violations of a state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

26. As an actual and proximate cause of Defendants' unlawful retaliation, Mr. Shoaf has suffered and will continue to suffer damages including loss of wages and earnings, emotional distress, and other general and special damages, all in amounts to be proven at trial.

27. Defendants, by their conduct as set forth above, engaged in despicable conduct, exposing Mr. Shoaf to cruel and unjust hardship, with the intention to cause injury to Mr. Shoaf, and with conscious disregard of his rights. Defendants occupied a position of trust which gave them power to damage Mr. Shoaf's ability to earn a livelihood. Defendants abused that position of trust by maliciously, fraudulently, and oppressively retaliating against Mr. Shoaf, and constructively discharging Mr. Shoaf under the circumstances described here. Defendants' conduct was carried out by and ratified by one of more of Defendants' managing agents including, without limitation, Mr. Kirby. Mr. Shoaf is therefore entitled to punitive damages in an amount to be determined by the jury at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

///

///

## SECOND CLAIM FOR RELIEF
### RETALIATION FOR REPORTING SAFETY VIOLATIONS TO EMPLOYER
### (Cal. Lab. Code §§ 6310)

28. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 27 as though fully set forth herein.

29. California Labor Code, Section 6310 prohibits employers from retaliating against an employee for making any oral or written health and/or safety complaint to his or her employer.

30. In doing the acts and things described in the preceding paragraphs, Defendants constructively terminated Mr. Shoaf's employment because he disclosed information to his employer regarding violations of a state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, and refused to acceded and participate in illegal conduct.

31. As an actual and proximate cause of Defendants' unlawful retaliation, Mr. Shoaf has suffered and will continue to suffer damages including loss of wages and earnings, emotional distress, and other general and special damages, all in amounts to be proven at trial. Mr. Shoaf is entitled to relief including money damages and injunctive relief including reinstatement under the employee protection provisions of the California Occupational Safety and Health Act, California Labor Code Section 6310.

32. Defendants, by their conduct as set forth above, engaged in despicable conduct, exposing Mr. Shoaf to cruel and unjust hardship, with the intention to cause injury to Mr. Shoaf, and with conscious disregard of his rights. Defendants occupied a position of trust which gave them power to damage Mr. Shoaf's ability to earn a livelihood. Defendants abused that position of trust by maliciously, fraudulently, and oppressively retaliating against Mr. Shoaf, and constructively discharging Mr. Shoaf under the circumstances described here. Defendants' conduct was carried out by and ratified by one of more of Defendants' managing agents including, without limitation, Mr. Kirby. Mr. Shoaf is therefore entitled to punitive damages in an amount to be determined by the jury at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

///

///

///

### THIRD CLAIM FOR RELIEF
### WRONGFUL CONSTRUCTIVE DISCHARGE IN VIOLATION OF PUBLIC POLICY

33. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 32 as though fully set forth herein.

34. In doing the acts and things described in the preceding paragraphs, Defendants subjected Mr. Shoaf to working conditions that violated public policy, and Defendants intentionally created or knowingly permitted these working conditions.

35. These working conditions were so intolerable that a reasonable person in Mr. Shoaf's position would have had no reasonable alternative but to resign. Defendants created these intolerable working conditions acting though its officers, directors, managing agents, or supervisory employees including, without limitation, Mr. Kirby.

36. Mr. Shoaf resigned because of the working conditions described herein, which were unusually aggravated or involved a continuous pattern of mistreatment and were not trivial. Mr. Shoaf resigned rather than commit a violation of public policy.

37. As an actual and proximate cause of these intolerable working conditions, Mr. Shoaf has suffered and will continue to suffer damages including loss of wages and earnings, emotional distress, and other general and special damages, all in amounts to be proven at trial.

38. Defendants, by their conduct as set forth above, engaged in despicable conduct, exposing Mr. Shoaf to cruel and unjust hardship, with the intention to cause injury to Mr. Shoaf, and with conscious disregard of his rights. Defendants occupied a position of trust which gave them power to damage Mr. Shoaf's ability to earn a livelihood. Defendants abused that position of trust by maliciously, fraudulently, and oppressively retaliating against Mr. Shoaf, and constructively discharging Mr. Shoaf under the circumstances described here. Defendants' conduct was carried out by and ratified by one of more of Defendants' managing agents including, without limitation, Mr. Kirby. Mr. Shoaf is therefore entitled to punitive damages in an amount to be determined by the jury at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

///

///

///

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Marcus Shoaf prays for relief in his favor and against Defendants as follows:

1. On all claims for relief, for special, general, exemplary and punitive damages, all in amounts to be proven at trial;
2. On the first and second claims for relief, for declaratory relief, injunctive relief, reinstatement and back pay;
3. For costs, including expert witness fees, interest, and reasonable attorney's fees; and
4. For such other relief in favor of Mr. Shoaf and against Defendants as the Court deems just and proper.

Dated: January 20, 2018            **ROSE LAW, APC**

By:   */s/ Joseph W. Rose*
      Joseph W. Rose
      Mehran Tahoori
      Attorneys for Plaintiff
      MARCUS SHOAF

## DEMAND FOR JURY TRIAL

Plaintiff Marcus Shoaf demands a trial by jury on all claims for relief.

Dated: January 20, 2018            **ROSE LAW, APC**

By:   */s/ Joseph W. Rose*
      Joseph W. Rose
      Mehran Tahoori
      Attorneys for Plaintiff
      MARCUS SHOAF